**Iola HUNTER, wife of/and
Levin Hunter, Sr.**

v.

**INTREPRINDEREA de EXPLORE
FLOTT MARITIME NAVROM.**

Civ. A. No. 87–3596.

United States District Court,
E.D. Louisiana.

April 12, 1988.

Charles W. Dittmer, Jr., Domengeaux & Wright, New Orleans, La., Harris M. Dulitz, Metairie, La., for plaintiffs Iola Hunter, wife of/and Levin Hunter, Sr.

Robert H. Murphy and Peter B. Sloss, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendant Intreprinderea de Exploatare a Floti Maritime NAVROM.

Richard B. Foster and Michael M. Simpson, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendant and cross-claimant Comet Rice, Inc./Comet Delta, Inc.

Edward J. Koehl, Jr. and John L. Duvieilh, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for intervenor/defendant of Comet's Counter Claim Cooper/T. Smith Stevedores.

HEEBE, Chief Judge.

This cause came on for hearing March 23, 1988 on the motion of defendant, Intreprinderea de Exploatare a Floti Maritime NAVROM ("NAVROM"), for summary judgment.

The Court, having considered the record, the arguments of counsel, and the memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion for summary judgment of defendant, Intreprinderea de Exploatare a Floti Maritime be, and the same is hereby, GRANTED.

## REASONS

Levin Hunter, Sr. ("Hunter") and his wife filed this action under the Longshore and Harbor Workers' Compensation Act ("LHWCA") against the Intreprinderea de Exploatare a Floti Maritime NAVROM ("NAVROM"), the owner of the vessel on which Hunter allegedly sustained the injury which is the subject of this lawsuit. NAVROM now moves this Court for summary judgment, seeking a dismissal of plaintiffs' claims on the grounds that the vessel in question was not negligent, and, as a result, cannot be found liable as a matter of law.

On September 21, 1984 Hunter, in his capacity as an employee of Cooper/T. Smith Stevedores, Inc. ("Cooper/T. Smith"), was injured while loading onto the M/V VALEA ALBA cargo, which consisted of sacks of rice owned by or consigned from Comet Rice Company ("Comet"). Crucial to this Court's ruling on this motion is its understanding of the stevedoring procedures employed by Cooper/T. Smith and of the packaging of the rice by Comet.

The rice being loaded aboard the M/V VALEA ALBA was shipped by barge from Comet's Greenville, Mississippi plant to Belle Chasse, Louisiana. In Greenville, Comet personnel bagged the rice and transferred the bags, or sacks, by conveyor belt into the barges. Once on the barges, the sacks were placed in nylon slings by other Comet employees. Each nylon sling held twenty-eight sacks of rice and had an eye at either end of it.

In 1981, when Comet first engaged Cooper/T. Smith's services to load its rice onto ships, Cooper/T. Smith designed a device, called a "spreader bar," to facilitate the stevedoring of Comet's rice. This spreader bar has twenty hooks. Each hook is capable of having one slung unit, consisting of twenty-eight sacks of rice, affixed to it. The slings are attached to the spreader bar by first threading a rope through the eyes at the end of each sling, and then hooking that rope onto a spreader bar hook. Obviously, the spreader bar and the placing of rice sacks in slings to be attached to the spreader bar greatly accelerates Cooper/T. Smith's stevedoring operations of Comet's rice.

The spreader bar, with the slung units of rice attached, is then lifted by a Cooper/T. Smith water derrick. At this time, the weight of the twenty-eight bags of rice in each slung unit tightens the slings around the bags therein. The Cooper/T. Smith water derrick then lowers the spreader bar, with the slung units of rice hooked onto it, into or onto that portion of the vessel in which the rice is to be stowed. However, it is not always possible to land the entire twenty units attached to the spreader bar. As more and more rice is stowed, it often is impossible to land an entire spreader bar's load of rice in the aforementioned manner because there is not enough room. To fill the areas too small to accommodate a full spreader bar's compliment of rice, the rice bags must be detached from the spreader bar and stowed by hand. To accomplish this, the Cooper/T. Smith stevedores must de-sling the bags.

One of the ways the stevedores de-sling the rice bags is cutting the slings with a knife, which allows the bags to fall into the open area. The slings may be cut either when they are taut or when they are loose. Hunter's accident occurred when he cut a sling hanging from Cooper/T. Smith's spreader bar. The sling was under tension from the weight of the rice. When Hunter cut the sling, it popped and struck him in the eye.

Cooper/T. Smith longshoremen have been cutting the slings in their loading operations since 1981. When a taut sling was cut, it would pop. Hunter was aware of this. (Levin Hunter, Sr. deposition pp. 93–94).[1]

It is uncontested that Hunter's accident was caused by the manner and method used to de-sling the rice packages. It is also uncontested that the crane and spreader bar used to lower the rice into the vessel were owned by and under the control of Cooper/T. Smith. It is further uncontested that the rice was packaged in its sacks by Comet, and the sacks were joined with the slings by Comet.

Mover admits that there is no question Hunter is a covered employee under the LHWCA, 33 U.S.C. § 901, et seq. Yet mover argues that under the uncontested facts of this case, set forth above, there is no basis under which the vessel M/V VALEA ALBA can be liable under the LHWCA.

A review of the landmark Supreme Court decision of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), and its applicable Fifth Circuit progeny, is necessary to determine the merits of defendant's motion. In *Scindia*, the Supreme Court articulated the duties owed by a vessel to employees covered under the LHWCA.

The *Scindia* court explained that a vessel has no duty to supervise or inspect the stevedore's cargo operations unless such a duty is imposed by contract, law, or cus-

---

**1.** Hunter's knowledge of the taut sling's propensity to pop is irrelevant in that neither contrib-

utory negligence nor assumption of the risk are defenses to an LHWCA claim.

tom.[2] This explanation is "consistent with the Congressional intent to foreclose the faultless liability of the shipowner...." 451 U.S. at 172, 101 S.Ct. at 1624. Accordingly, a vessel shall only be liable for its own negligence. 451 U.S. at 170, 101 S.Ct. at 1623–24.

However, what Hunter and those parties opposing this motion do allege is that the vessel, through its officers and crew, had actual knowledge that Cooper/T. Smith's stevedoring operations were dangerous. They argue that the vessel's alleged actual knowledge of these allegedly dangerous operations imposed upon the vessel a duty to eliminate the dangerous procedures. The major thrust of this opposition to defendant's motion is that there exists a material factual dispute regarding the dangerous nature of the stevedore operations with which he was involved, and that the defendant, mover herein, had actual knowledge of this dangerous nature. Thus, plaintiffs contend that there exists a question of fact regarding both the "propriety of the practice and the dangers presented"[3] by the stevedore operations, and whether the mover had actual knowledge of these alleged dangerous operations.

Of course, the Court must consider any disputed material facts in a light most favorable to the plaintiff. 451 U.S. at 159, 101 S.Ct. at 1617–18. Accordingly, the Court will assume, for purposes of this motion only, that the stevedore operations which injured Hunter, namely cutting the tight slings, was a dangerous practice. The Court further assumes that the M/V VALEA ALBA had actual and complete knowledge of these practices and their dangerous character.

"[The] mere knowledge of the danger would not be sufficient in itself to fasten such a duty on the shipowner, but if the shipowner should anticipate that the stevedore will not or cannot correct the danger and that the longshoremen cannot avoid it,

then the shipowner's duty is triggered to take steps to eliminate ... the hazard." 451 U.S. at 174–175, 101 S.Ct. at 1626.[4] Thus, there exists an additional fact which the Court will also assume in Hunter's favor. The Court will assume that the vessel should have anticipated that Hunter could not avoid the danger.

Therefore, the Court has assumed for purposes of this motion not only that the stevedoring operations which injured Hunter were dangerous and that the vessel knew they were dangerous, but also that the vessel knew of the longshoremen's inability to avoid the danger. Under *Scindia* alone, this third assumption would appear to impose a duty onto the vessel to protect Cooper/T. Smith's longshoremen. 451 U.S. at 174–175, 101 S.Ct. at 1625–26.

An extremely important factor distinguishing *Scindia* from the case at hand is that in *Scindia* the dangerous condition of the stevedore operations resulted from a winch which was part of the ship's gear. Hunter's injury was caused by a dangerous condition which had nothing to do with the ship's gear.

The Fifth Circuit recognized this distinction while addressing the scope of the *Scindia* exception in *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209 (5th Cir.1984). In *Futo*, the plaintiff therein died as a result of a fall aboard a vessel upon which he was working as a longshoreman covered under the act. The vessel was owned by Lykes Brothers. At the time of his death, Futo was employed by Dixie Machine Welding and Metal Works ("Dixie"), which contracted with Lykes to perform repairs to the subject vessel. *Futo* explained that the "most basic" *Scindia* principle is that in general, a vessel owner may rely on the stevedore to avoid exposing its employee longshoremen to unreasonable hazards. 742 F.2d at 213. However, *Futo* was careful to discern *Scindia's* exception to this

---

**2.** Hunter has not alleged that such a duty arises from any contract, custom, or law; nor has any evidence arisen indicating such a contract, custom, or law exists.

**3.** R. 36, p. 2.

**4.** This latter provision, imposing a duty onto the shipowner if he anticipates the inability of the stevedore to correct, or the longshoremen to avoid, dangers known to the shipowner will be hereinafter referred to as the *Scindia* exception.

principle, and clearly stated that where the shipowner knows of a danger on the ship, and knows that the stevedore is not taking steps to remove that danger, a duty to intervene on the longshoremen's behalf is imposed on that shipowner. 742 F.2d at 214.

*Futo* explained that "exceptions of this sort ... are largely sensible ones; they recognize ... [one's] ... affirmative responsibility toward others when one has taken an active part in directing the manner in which those others perform those tasks or when one creates or is generally responsible for a dangerous situation that causes harm." 742 F.2d at 214.

The Fifth Circuit in *Futo* recognized that the parties' arguments therein focused on the distinction between dangerous conditions involving the ship, herself, her gear, or equipment, and hazards unrelated to the ship, her gear, or equipment. This is precisely the distinction which NAVROM attempts to rely upon in this case. *Futo* explained that "the fact that a [dangerous] condition involves the ship itself, its gear, or equipment is relevant, and, in some circumstances, may be determinative." 742 F.2d at 215. However, the *Futo* court specifically rejected, as mover argues, a blanket rule stating that "the involvement of the ship itself, its gear, or equipment, is in all circumstances *per se* either necessary or sufficient to impose a duty on a shipowner ..." who has actual knowledge of the situation. Yet, *Futo* did affirmatively state that something more than the shipowner's mere knowledge of the dangerous condition is needed to impose a duty upon the shipowner to intervene, and that the ship's condition, and that of her gear and equipment, is also very important. 742 F.2d at 215.

The Fifth Circuit explained *Futo* in *Casaceli v. Martech International Inc.*, 774 F.2d 1322 (5th Cir.1985). Therein the court explained that the "*Scindia* exception 'does not ... extend to an open and obvious transitory condition' created and controlled by the independent contractor, and wholly related to the contractor's gear and operations.... [742 F.2d at 216]" 774 F.2d at 1327. *Casaceli* then enumerated certain factors outlined in *Futo* which a court

should consider in determining whether a vessel owner enjoys a duty to intervene in favor of a stevedore. Those factors are (1) whether the danger was open and obvious? In this case, we have assumed that it was. (2) Whether the danger was located within the ship or her gear? Here, the condition had nothing to do with the vessel's gear. (3) Which party created the danger or used the defective item and was, therefore, in a better position to correct it? Clearly, Cooper/T. Smith is in a better position to correct a dangerous stevedoring operation than the vessel, particularly when the operation was performed on Cooper/T. Smith's equipment. (4) Who owned the defective item? Perhaps it was Cooper/T. Smith or Comet, but certainly not the vessel. (5) Did an affirmative act of negligence, or acquiescence in the use of the dangerous item, occur? We must assume that the vessel acquiesced in the dangerous practice; however, in no way was there an affirmative act of negligence on her part. And (6), did the shipowner assume any duty with regard to the dangerous item? There is no evidence to indicate that the M/V VALEA ALBA assumed any duty through contract, custom, or law. 774 F.2d at 1328.

*Futo* made it quite clear that it was important that the claim therein, like Hunter's claim, involved a failure to act, as opposed to any active negligence, on the vessel's part. 742 F.2d at 214. However, the most important and convincing factor which this Court relies upon in deciding this motion is that Hunter's injury was clearly and admittedly caused by the equipment of Cooper/T. Smith and Comet's being cut and popping into his eye. The vessel had absolutely nothing to do with the cause of Hunter's injury.

Plaintiffs' entire argument is based upon their contention that they must be allowed to prove that the stevedoring operations were dangerous and that the vessel had actual knowledge that these dangerous conditions existed and Hunter could not avoid them. However, these disputed facts have been assumed in plaintiffs' favor.

Although *Futo* is distinguishable from the assumed facts herein in that Mrs. Futo failed to prove that Lykes knew of the

dangerous condition, the court, in its conclusion, explained again that the alleged dangerous condition was not an appurtenance of the vessel and "was created and used entirely by the independent contractor, who both owned and controlled it. Nothing that the shipowner did, and nothing about the ship itself, or any operation of it, contributed to the hazard.... [I]n these circumstances the shipowner ... had no duty to intervene, even if it possessed the full measure of actual knowledge required by *Helaire [v. Mobil Oil Co.* (5th Cir.1983)]." 742 F.2d at 221.

The (assumed) dangerous condition presented by Cooper/T. Smith's subject loading operations was "not an appurtenance of the ship ... but was used entirely by the independent contractor to perform its work." 742 F.2d at 218. The items which caused Hunter's injury belonged to and were controlled by Cooper/T. Smith and/or Comet. In fact, the (assumed) dangerous condition was created by devices which were invented by Cooper/T. Smith in order to more efficiently fulfill its contractual obligations owed to Comet.

Accordingly, in the spirit of *Futo,* as explained by *Casaceli,* this Court GRANTS the motion of Intreprinderea de Exploatare a Floti Maritime NAVROM for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, dismissing the claims of plaintiffs against it.